UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF WEST VIRGINIA
Charleston

FILED
JAN 18 2011
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

United States of America
    Plaintiff,

v.                             Case No. 10-cv-01087

$ 88,029.08
    Defendant
(Katherine A. Hoover and John F. Tomasic, interested parties.)

## MOTION TO COMPLY WITH TREATY LAW

NOW COME Katherine A. Hoover MD and John F. Tomasic, pro se, and move that the Court comply with The Vienna Convention which the United States of America acceded to in 1971 and The Single Convention acceded to in 1961.

Treaty law is the supreme law of the land. When a nation accedes to a treaty, it agrees with the words and the spirit of the treaty. The Vienna Convention protects doctors and patients from government intervention and prosecution. The Vienna Convention protects the people in the countries where it is law from deprivation of health and medical care. The United States attorneys' office, upon information and belief mainly Ms. Monica Schwartz, closed the practice at 35 West Third Ave. Williamson, West Virginia on March 2, 2010, eliminating medical care and recklessly endangering the lives of thousands of patients. Ms. Schwartz then proceeded to threaten Dr. Hoover with eighteen months in jail for an act that was not a crime, but involved treating a patient, an area where she has no jurisdiction.

Dr. Norman Gay has been caring for Dr. Katherine Hoover since March, 2010. The letter written by Dr. Gay is attached to this pleading (exhibit A). Medical care is a right guaranteed by The Vienna Convention.

West Virginia had the wisdom to pass an Intractable Pain Treatment Act (Exhibit B) which protects doctors, nurses and pharmacists from criminal prosecution and <u>requires</u> that they treat pain. State law trumps federal law when it comes to the practice of medicine. The United States Supreme Court, in Gonzales v. Oregon 545 U.S. 243 (2006), ruled that state law was controlling. This decision gives states subject matter jurisdiction when it comes to the practice of medicine. West Virginia legislated protection for treating pain, even treating pain in addicts.

WHEREFORE, John F. Tomasic and Katherine A. Hoover MD request that the Court and the United States Attorney comply with treaty law and West Virginia law and return our money. West Virginia has the opportunity to forge a new paradigm for the treatment of addiction and the cooperation between medicine and law enforcement for the benefit of all West Virginians. Continuing to jail very ill people violates treaty law and violates moral law.

# THE BAHAMAS ANTI-AGING MEDICAL INSTITUTE
## WEST BAY MEDICAL CLINIC



**DR. NORMAN GAY**
P. O. Box N-3222
Nassau, Bahamas
Tel/Fax: (242) 328-4014
email: drnormangay@yahoo.com

January 5th 2011

Judge John T. Copenhaver
c/o United States District Clerk for the
Southern District of West Virginia
Suite 2400
Charleston, West Virginia 25301

Dear Judge Copenhaver;

**RE: Katherine A. Hoover, MD**
**Case No. 10-cv-0187**

Katherine A. Hoover MD, born August 25th, 1950, has been my patient since March 2010. She has been very ill since July 18th 2008. During the course of her husband disposition regarding the murder of their son at North Central Regional Jail in West Virginia, Dr. Hoover became violently ill, sweating, dizzy, heart palpitations and poor thinking. She subsequently developed excessive salivation, congestive hart failure and atrial fibrillation and was hospitalized in Clarksburg, West Virginia at United Hospital Center.

She improved and refused the recommendation of Cardiac Vascular surgery; made at that time. She was able to return to work but has not been well since the original trauma. Her condition was exacerbated after a raid done by Federal Agents at the clinic where she worked.

Dr. Hoover and I had been acquaintances for some time and she knew of my extensive work in anti-aging and natural medicine; she came to the Bahamas for medical care.

After a complete history and physical, I concluded that some type of poisoning could not be ruled out. Research done by Dr. Hoover and her

husband had led them to believe that Prussic Acid (Cyanide) was most likely to blame. For a completely healthy woman, with no prior history of cardiac problem to become ill so suddenly would be consistent with poisoning.

Dr. Hoover continued to be very ill and her congestive heart failure recurred. I referred her to a cardiologist who stabilized her condition with Lanoxin and Lasix, Her hearth rate remained high so he added Lopressor. The cardiologist is recommending Vascular Surgical repair. I had started her on supplements which after several months have improved her condition. Her medical condition requires close monitoring and reduced stress with the view of regaining health and avoiding surgery.

I have been extensively involved in Pan American Health Organization, PAHO in the past as a chairman of the executive committee and I am familiar with the protections given by the Vienna Convention and other treaties. The abrupt closing of a busy medical clinic where many patients were on narcotics and benzodiazepines has its dangers. This act violates the protection given to citizens of many countries that is a signatory to The Vienna Convention which protects human rights. The stress put on Dr. Hoover by Ms. Monica Schwartz by threatening her is dangerous. I recommended to Dr. Hoover that she cease communicating with Ms. Schwartz because of the trauma it caused her.

Dr. Hoover continues to need monitoring. Her blood pressure is finally above 80/60. Any renewed stress will certainly threaten her condition.

Doctors are protected by The Vienna Convention and any prescription written is not to be second guessed by non-medical people. Dr. Hoover has informed me that doctors in the United States are protected by Title 21 USC 801 (a)(3)(C) and that West Virginia physicians are further protected by the Intractable Pain Act. Since the rule of law must be followed, I recommend protection for Dr. Hoover from further stress and harassment.

Respectfully submitted,

*[signature]*

Norman R. Gay, MD



wv.gov - WVBOM

**Board Information**
- WVBOM Home Page
- About the WVBOM
- Available Services
- Staff Members
- Members and Officers
- Committees
- Board Meetings
- Applications
- Forms
- Board Public Hearings
- Position Statements

**Laws and Rules**
- Medical Practice Act
- Rules
- Continuing Education
- Management of Intractable Pain

**Licensure**
- Requirements - MD's
- Requirements - DPM's
- Requirements - PA's
- Activity
- Request for Continuation of License - Military Deployment

**Miscellaneous**
- Licensee Search
- Directory
- Annual Report 2010
- Newsletter
- Disciplinary Action
- WVBOM FAQ's
- Renewal FAQ's
- Contact Info
- Related Links

## ARTICLE 3A. MANAGEMENT OF INTRACTABLE PAIN.

**§30-3A-1. Definitions.**

For the purposes of this article, the words or terms defined in this section have the meanings ascribed to them. These definitions are applicable unless a different meaning clearly appears from the context.

(1) An "accepted guideline" is a care or practice guideline for pain management developed by a nationally recognized clinical or professional association or a specialty society or government-sponsored agency that has developed practice or care guidelines based on original research or on review of existing research and expert opinion. An accepted guideline also includes policy or position statements relating to pain management issued by any West Virginia board included in chapter thirty of the West Virginia code with jurisdiction over various health care practitioners. Guidelines established primarily for purposes of coverage, payment or reimbursement do not qualify as accepted practice or care guidelines when offered to limit treatment options otherwise covered by the provisions of this article.

(2) "Board" or "licensing board" means the West Virginia board of medicine, the West Virginia board of osteopathy, the West Virginia board of registered nurses or the West Virginia board of pharmacy.

(3) "Intractable pain" means a state of pain having a cause that cannot be removed. Intractable pain exists if an effective relief or cure of the cause of the pain: (1) Is not possible; or (2) has not been found after reasonable efforts. Intractable pain may be temporary or chronic.

(4) "Nurse" means a registered nurse licensed in the state of West Virginia pursuant to the provisions of article seven of this chapter.

(5) "Pain-relieving controlled substance" includes, but is not limited to, an opioid or other drug classified as a schedule II controlled substance and recognized as effective for pain relief, and excludes any drug that has no accepted medical use in the United States or lacks accepted safety for use in treatment under medical supervision including, but not limited to, any drug classified as a schedule I controlled substance.

(6) "Pharmacist" means a registered pharmacist licensed in the state of West Virginia pursuant to the provisions of article five of this chapter.

(7) "Physician" means a physician licensed in the state of West Virginia pursuant to the provisions of article three or article fourteen of this chapter.

**§30-3A-2. Limitation on disciplinary sanctions or criminal punishment related to management of intractable pain.**

(a) A physician shall not be subject to disciplinary sanctions by a licensing board or criminal punishment by the state for prescribing, administering or dispensing pain-relieving controlled substances for the purpose of alleviating or controlling intractable pain when:

(1) In a case of intractable pain involving a dying patient, in practicing in accordance with an accepted guideline as defined in section one of this article, the physician discharges his or her professional obligation to relieve the dying patient's intractable pain and promote the dignity and autonomy of the dying patient, even though the dosage exceeds the average dosage of a pain-relieving controlled substance; or

(2) In the case of intractable pain involving a patient who is not dying, the physician discharges his or her professional obligation to relieve the patient's intractable pain, even though the dosage exceeds the average dosage of a pain-relieving controlled substance, if the physician can demonstrate by reference to an accepted guideline that his or her practice substantially complied with that accepted guideline. Evidence of substantial compliance with an accepted guideline may be rebutted only by the testimony of a clinical expert. Evidence of noncompliance with an accepted guideline is not sufficient alone to support disciplinary or criminal action.

## CERTIFICATE OF SERVICE

I, Katherine A. Hoover, do hereby certify that a true and correct copy of the foregoing Motion to Comply with Treaty Law has been faxed to the United States Attorney, Ms. Betty Pullin, on January 17, 2011, at 304-347-5104.

*Katherine A. Hoover*

Katherine A. Hoover
c/o Dr. Norman Gay
West Bay Medical Clinic
West Bay Street
N-3222
Nassau, N.P., Bahamas
242-525-4018

FedEx International Air Waybill

**1 From**
Date: 1-14-11
Sender's Name: Katherine Howe
Phone: 243-40...
Company: Culture Project
Address: Houston Bay
Address: Suite 400
City: West Bay
State/Province: NY
ZIP/Postal Code:
Country: USA

**2 To**
Recipient's Name: US Clerk's Court House
Company: US Court House
Address: Charleston
Address:
City: Charleston
State/Province: WV
ZIP/Postal Code: 25301
Country: USA
Phone: 304-3000

**3 Shipment Information**
Total Packages: 1
Total Weight: lbs
Commodity Description: Docs

FedEx Tracking Number: 8736 5943 7324
Form ID No: 0402

Origin Station ID: USA
Country Code/Destination Station ID: USA CHA KH