UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA,

      Plaintiff,

v.          CIVIL ACTION NO. 2:10-1087

$88,029.08, MORE OR LESS,
IN UNITED STATES CURRENCY,

      Defendant.

(Katherine Anne Hoover, M.D. and
 John F. Tomasic;
 No pending federal criminal charges)

MEMORANDUM OF LAW IN SUPPORT OF
UNITED STATES RESPONSE TO
"MOTION TO SET ASIDE DEFAULT JUDGMENT"

I. Procedural History

  A. The Verified Complaint of Forfeiture was filed on September 10, 2010. A "Warrant of Arrest <u>in</u> <u>rem</u> and Notice to Potential Claimants" (hereinafter "Warrant") was issued on the same day by the Clerk of the Court (Docket #2). The Warrant directed the United States Marshal to arrest the currency and directed potential claimants of the procedures and deadlines for filing verified claims and answers.

  B. On September 28, 2010, a Certificate of Service was filed by the United States regarding service of the Verified Complaint and Warrant upon Katherine Hoover and John F. Tomasic at all addresses known for them by the United States (Docket #5).

C. On October 18 and 19, 2010, a response to the complaint, a request for enlargement of time and an addendum to its response were filed by Ms. Hoover on her and Mr. Tomasic's behalf (Docket #9, 10, 11). These documents failed to comply with the pleading requirements of Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Accordingly, on October 27, 2010, the United States filed a motion to strike all three documents (Docket #12). In its motion, the United States agreed not to object to the timeliness of Hoover's and Tomasic's claims as long as their claims and answers were filed with the court, in proper form, and served on counsel for the United States by November 21 (Tomasic) and November 22 (Hoover), or on such other date as the court may deem appropriate. November 21 and 22 were the dates on which Tomasic's and Hoover's answers were due to be filed.

D. John F. Tomasic filed a document entitled "Verified Response" on November 2, 2010 (Docket #15).

E. By Order entered November 8, 2010, the Court referred the case to United States Magistrate Judge Mary E. Stanley, to consider the briefing, pleadings and evidence and, to the extent required, submit to the court her proposed findings of fact, conclusions of law and recommendations for decision. (Docket #17).

F. On November 23, 2010, and after the deadlines for filing their answers, a "Verified Response" to the complaint and to the United States motion to strike was filed by Katherine Hoover on her and her husband's behalf. (Docket #20).

G. Approximately four weeks later, Magistrate Judge Stanley entered an Order (Docket #26) granting Hoover's and Tomasic's request for an enlargement of time (Docket #10) and motion for extension of time (Docket #16). Interested parties were directed to serve and file with the Clerk of the Court his or her respective claim to the defendant property by January 14, 2011, and his or her respective answer within 21 days after filing their claims. The order further directed that "Dr. Hoover could not represent the interests of Mr. Tomasic absent proper authorization such as an executed power of attorney." The court also granted the government's motion to strike Docket #9, 10, 11. Although the Order was silent as to the court's view of the Verified Responses filed by Tomasic on November 2, 2010, and by Hoover and Tomasic on November 23, 2010, the documents were obviously deemed to be deficient since the court directed the interested parties to file their respective claims and answers at a later date.

H. Subsequent to the court's order of December 20, 2010, Hoover and Tomasic filed numerous documents with the clerk of this court, none of which could be construed as their claims or answers: Docket #29 and #32 (Entitled "Lack of Documentation to Support

3

Subject Matter Jurisdiction," which the United States construed to be a motion to dismiss for lack of subject matter jurisdiction and responded accordingly); Docket #33 (Entitled "Motion ... to Comply with Treaty Law" which the court denied - Docket #40); and Docket #38 (Entitled "Criminal Acts And High Crimes Committed by Betty Pullin," which was stricken *sua sponte* by the court - Docket #39).

    I.    On February 7, 2011, the United States applied to the clerk of the court for the entry of defaults against Katherine Hoover and John Tomasic for failure to file their claims and answers as directed by the court's December 20, 2010 order (Docket #42).

    J.    On February 8, 2011, the Clerk found Ms. Hoover and Mr. Tomasic to be in default (Docket #43, 44).

    K.    Pending before the court is Ms. Hoover's and Mr. Tomasic's motion to set aside the defaults (Docket #45).

## DISCUSSION

Disposition of a motion made under Rule 55(c), Federal Rules of Civil Procedure, is a matter which lies within the discretion of the court. <u>Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.</u>, 383 F.2d 249, 251 (4th Cir. 1967). Unless it "clearly appears that the court was clearly wrong in finding that good cause had not been shown for setting aside the default," an exercise of such discretion will not be disturbed. <u>Id.</u>

Rule 55(c) provides that, "for good cause shown the court may set aside the entry of default and if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." No judgment by default has yet been entered in this action, therefore, the court need only consider Rule 55(c).

### The Motion to Set Aside the Defaults Should be Denied for Lack of Good Cause and Lack of a Meritorious Defense

When considering whether to set aside a default, the Court of Appeals for the Fourth Circuit has dictated that the district court consider, among other things, whether the moving party has a meritorious defense. Payne ex rel. Est. of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006); Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir. 1987). The burden of establishing a meritorious defense rests with the moving party. Disclosure of facts or identification of specific legal theories may be required by the court in order to determine whether an asserted defense is, in fact, meritorious. Id. A bare allegation of a meritorious defense, alone, is insufficient to satisfy this burden. Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp., 383 F.2d 249, 251 (4th Cir. 1967).

In this case, Ms. Hoover and Mr. Tomasic have alleged repeatedly throughout the many documents they have filed that $85,127.08 of the defendant currency constitutes proceeds from the lawsuit settlement regarding the death of their son, Michael Tomasic:

5

1. <u>Docket #9, page 2</u>: "The money seized from the Wesbanco account was the remainder of the settlement paid to John F. Tomasic ... (as) his share of (a lawsuit settlement) ... regarding "the murder of our son by the guards at North Central Regional Jail and subsequent cover up by state and federal officials."

2. <u>Docket #11, pages 3, 5</u>: alleging fraud against FBI Special Agent James Lafferty and West Virginia State Police Sergeant M. T. Smith for stating in affidavits that monies deposited into the Wesbanco account were checks from Dr. William Ryckman, M.D.[2] and claiming the monies that were seized from the account were the lawsuit settlement monies.

3. <u>Docket #13</u>: exhibit to their motion is a copy of the settlement check.

4. <u>Docket #15, page 1</u>: "The sum of money removed from Wesbanco was from the law suit settlement ..."

5. <u>Docket #20</u>: the lawsuit settlement is referenced throughout.

6. <u>Docket #29 and #32, page 3</u>: "The entire (lawsuit settlement) was deposited in (the Wesbanco account)... These funds belong to John Tomasic."

In their motion to set aside the default (Docket #45), Hoover and Tomasic claim that the government admitted in its amended

---

[2]Dr. Ryckman was the owner of the clinic, and consequently Dr. Hoover's employer, at the time the warrants were executed on March 2, 2010.

response (Docket #37) "that the funds that were seized were from the lawsuit settlement received by Mr. Tomasic."

Ms. Hoover and Mr. Tomasic have completely misconstrued the government's position on the proceeds in the bank account set forth in its amended response. The United States does not dispute that a check in the amount of $191,775.75, with a note in the memo line: "Estate of Michael Tomasic," was deposited into the Wesbanco account on August 14, 2009. However, the United States has not admitted that the $85,127.08 seized from the account on March 2, 2010, was the proceeds from this settlement. To the contrary, the records of their account at Wesbanco, which were attached to the government's amended response (Docket #37), reveal that numerous checks in amounts of several thousand dollars each were drawn on the account after this deposit, including a $20,000 downpayment on a 2010 Mercedes Benz. Additionally, on November 5, 2009, $150,020 was wire transferred out of the account and into the "William B. Hoover Estate." Even though the alleged settlement check was deposited into the account, those settlement proceeds are no longer there. Ms. Hoover and/or Mr. Tomasic have spent them or otherwise transferred them out to other sources.

7

To further corroborate that the settlement proceeds are no longer in the account, the United States directs the court's attention to a comment John Tomasic made in a recent letter to his daughter, Kathleen Busse, in January 2011:

> Dear Kathy,
>
> I am going the clock back on several issues. The first one is a note Katy received from Marrianne sent back in April 2010. It started nicely as a thank you note but quickly turned strange. ... **The note ended by declaring I didn't give enough of Michael's law suit award to everyone.** (Emphasis added)

See, exhibit to "Affidavit of West Virginia State Police Sergeant M. T. Smith," attached to and incorporated into the United States Response filed simultaneously with this Memorandum of Law.

Since their defense to the forfeiture of the proceeds of the Wesbanco account has been based entirely on those monies being the proceeds from the lawsuit settlement, and those monies are clearly no longer in the account, Ms. Hoover and Mr. Tomasic have failed to establish a meritorious defense to the forfeiture of the proceeds seized from the Wesbanco account. The balance of the account that was seized on March 2, 2010, constitutes deposits of Katherine Hoover's payroll checks from the medical clinic that was operated in violation of 21 U.S.C. §§ 801 et seq. She was employed by the clinic on a continuous basis since at least 2004 and was directly and substantially involved in and responsible for the vast majority of the controlled substance violations occurring at the clinic. Thus, her salary is directly traceable to proceeds generated by

8

those violations and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6). John Tomasic lacks a meritorious defense to the forfeiture of Ms. Hoover's employment proceeds since he has no direct legal interest in them and, therefore, no standing to defend their forfeiture. See, United States v. 328 Pounds More or Less, of Wild Ginseng, 347 F.Supp.2d 241, 245-46 (W.D. N.C. 2004) ["(i)n order to contest a forfeiture, a claimant must first demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no case or controversy, in the constitutional sense, capable of adjudication in the federal courts." (requiring the claimant to put forth evidence of ownership over the forfeited property)}.

As to the $2,905 in U.S. currency seized from Ms. Hoover's bedroom at Dr. Shafer's house in Williamson, West Virginia, Ms. Hoover has admitted that at least a portion of those funds ($500) are from her paycheck from the medical clinic and the remainder is allegedly monies she received from her father's estate (Docket # 9, page 3; Docket #29, 32, page 3). By her admission, the $500 is traceable to her employment with the clinic that was allegedly operated in violation of federal controlled substances laws. Additionally, while she claims the remainder of $2,405 came from her father's estate, Hoover was apparently using those funds to pay her daily living expenses and thus enabling her to stay in Williamson, West Virginia, during the week to work in the clinic

9

and away from her regular residence in Lost Creek, Harrison County, West Virginia. Since those funds facilitated her presence in Williamson, West Virginia, and her involvement with the clinic, she likewise does not have a meritorious defense against their forfeiture. John Tomasic likewise lacks standing and has no meritorious defense to the forfeiture of the $2,905 since he clearly has no legal interest in any of those monies. 347 F.Supp.2d at 245-46.

### The Government Will Suffer Substantial Prejudice Which Cannot be Relieved by the Imposition of Terms or Conditions On Hoover and Tomasic If the Defaults are Set Aside

Another factor to be considered by the court is substantial prejudice to the nondefaulting party which cannot be relieved by imposing terms or conditions on the defaulting party. Payne, 439 F.3d at 204-05; Lolatchy, 816 F.2d at 953; Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2699 (1998).

In the opening paragraphs of their motion seeking to set aside the defaults, Hoover and Tomasic state that "the court is required to give pro se litigants lenient interpretation of the rules" and both aver that they have followed all applicable rules.

The court and the United States have shown Ms. Hoover and Mr. Tomasic leniency in this case by granting them extensions of time to file their responsive pleadings, attempting to provide them guidance on how to proceed and weathering their abusive filings

when the court or the government responds in a manner not to their liking. They have failed to follow applicable law and rules of the court, and their filings reveal an attitude and determination that they are going to follow their own set of rules and anyone who disagrees or stands in their way becomes the target of slanderous and false accusations.

A review of the filings by Ms. Hoover and Mr. Tomasic in this case clearly establish that there are no terms or conditions that can be set or imposed by the court that would result in this litigation moving forward in a relatively efficient manner. Neither Ms. Hoover nor Mr. Tomasic can keep their filings focused on the relevant issues. Many of their filings ramble incoherently about topics or individuals that have absolutely nothing to do with the case at hand or establish that Ms. Hoover and Mr. Tomasic will resort to anything to get what they want. Here are just a few examples:

(1) rambling about the Vienna Convention and accusing the government of using the seized monies to reimburse a Dr. Carol Foster (who has nothing to do with this forfeiture action) for providing some type of alleged fraudulent certificate to attorney James Cagle (who likewise has nothing to do with this civil forfeiture proceeding) (Docket #9, which has been stricken);

(2) rambling about the "Crown Grant" to "Little Ragged Island" in the Bahamas (again, which has nothing to do with this civil

forfeiture action), and accusing government counsel of impersonating the President and Congress (Docket #38);

(3) allegedly threatening the ex-wife of John Tomasic sufficiently enough to get her to withdraw her claim in this case (See, Docket #34; see also, Affidavit of WVSP Sgt. M. T. Smith attached to the motion accompanying this memorandum of law);[3]

(4) falsely accusing government counsel of enticing Diane Shafer to file a claim against their money (Docket #29, 32) (Diane Shafer withdrew her claim - Docket #24, 30); and

(5) sarcastically stating that the Magistrate Judge was "moonlighting" as the undersigned government counsel after the court *sua sponte* struck their "scandalous" document accusing the undersigned counsel of high crimes. This was one of many instances where Ms. Hoover and Mr. Tomasic have shown complete disrespect of the court.

Ms. Hoover appears to be filing most if not all of these documents. She is an educated person, having obtained a medical degree, and is presumably an intelligent person. For her to be unable to keep the issues focused, and due to the poisonous nature of many of the documents she and Mr. Tomasic have filed, it appears that the lack of keeping focused on the issues at hand is

---

[3] The United States would have filed a motion to strike Ms. Lupher's claim for lack of standing so the alleged threat was completely unnecessary.

12

intentional and will continue on for as long as the litigation continues.

Rather than follow the court's order of December 20, 2010 and file their pleadings when directed to do so, Ms. Hoover and Mr. Tomasic filed other documents in the case, many of which were irrelevant, immaterial or "scandalous" in nature. (Docket #29, 32, 33, 38). Thus far, the docket sheet of the court has 47 entries, and Ms. Hoover and Mr. Tomasic have yet to make a proper appearance in the case. This forfeiture case is one of several presently pending in this court involving the same medical clinic, or involving another clinic with which Ms. Hoover has close ties, or involving another sum of currency seized from Ms. Hoover.[4] To continue down this path of disruptive and sometimes incoherent litigation with no view of moving forward is putting a significant strain on the resources of the government, especially in these times when budget cutbacks and freezes are stark realities for government agencies.

WHEREFORE, for the foregoing reasons, and for those stated in its response filed simultaneously herewith, the United States respectfully requests the court to deny the motion to set aside the defaults.

---

[4] United States v. $475,823.75, Civil Action No. 2:10-1007 (Myra C. Miller); United States v. $599,274.58, Civil Action No. 2:10-1406 (Diane E. Shafer); and United States v. $27,671.50, Civil Action No. 2:11-0101 (Katherine Hoover).

Respectfully submitted,

UNITED STATES OF AMERICA
By Counsel

R. BOOTH GOODWIN II
United States Attorney

By: s/Betty A. Pullin
Betty A. Pullin, WV Bar Number: 5590
Attorney for the United States
United States Attorney's Office
300 Virginia Street, East, Room 4000
Charleston, West Virginia 25301
Telephone: (304) 345-2200
Fax: (304) 347-5440
Email: betty.pullin@usdoj.gov