**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

UNITED STATES OF AMERICA,

               Plaintiff,

      v.                            CIVIL ACTION NO. 2:10-1087
                                           Judge John T. Copenhaver, Jr.

$88,029.08, MORE OR LESS,
IN UNITED STATES CURRENCY,

               Defendant.

(Katherine Anne Hoover, M.D. and
 John F. Tomasic, interested parties;
 no pending federal charges)

**RESPONSE OF THE UNITED STATES OF AMERICA
TO JOHN F. TOMASIC AND KATHERINE ANNE HOOVER, M.D.'S
REQUEST FOR A RULING ON 801(a)(3)(C) AND
NOTIFICATION OF BOND V UNITED STATES 564 US (2011)**

## I.  INTRODUCTION

John F. Tomasic and Katherine A. Hoover, M.D. ("claimants"), have filed yet another

motion requesting dismissal of this civil forfeiture action based on "21 USC 801(a)(3)(C)," the

"Single Convention and Vienna Convention," and Bond V United States."  This Court

previously rejected these arguments by the claimants in three prior rulings.  See the Court's

Orders of January 28, 2011, and April 12, 2011, (Docket Nos. 39, 40, and 53).  Judge Keeley of

the United States District Court for the Northern District of West Virginia likewise rejected these

same arguments raised by claimants when they attacked a search warrant executed on their

residence in Harrison County, West Virginia, in connection with the criminal investigation into

the matters which are also part of this civil forfeiture action.  See In the Matter of the Search of

Katherine A. Hoover's Residence, Lost Creek, Harrison County, West Virginia, 2011 WL 3664100 (N.D.W.Va. 2011) (attached as Exhibit 1 to this Response).  In sum, the claimants are simply trying to rerun these same arguments, hoping that the Court will somehow reach a different result.[1]  Those arguments were rejected previously and should be rejected again.

## II.  THERE IS NO STATUTORY PROVISION KNOWN AS "21 USC 801(a)(3)(C)," AND, THEREFORE, CLAIMANTS' ARGUMENTS SHOULD BE REJECTED YET AGAIN

As this Court has previously noted, the United States Code does not contain a statutory provision known as 21 U.S.C. § 801(a)(3)(C).  See Court's Order of January 28, 2011 (Docket No. 39 at pp. 1-2).  This reference by the claimants can only be speculated to be a reference to 21 U.S.C. § 801a(3)(C).  Id.  However, that statutory provision does not stand for the proposition being advanced by the claimants.

Congress enacted 21 U.S.C. § 801a(3)(C) as part of its statutory provisions designed to implement certain aspects of the Single Convention on Narcotics ("Convention"), 18 U.S.T. 1407, T.I.A.S. No. 6298, and the Convention on Psychotropic Substances signed at Vienna, Austria on February 21, 1971.  See United States v. Feld, 514 F.Supp. 283, 288 (E.D.N.Y. 1981). The "primary purpose of the Convention was to simplify and rationalize the numerous existing treaties on the international control of production and commerce in narcotic substances."  In re Grand Jury Proceedings the Bank Of Nova Scotia, 740 F.2d 817, 830 (11thCir. 1984), cert.

---

[1]The Court warned in its Order of August 8, 2011 (Docket No. 93 at p. 13n.3), that the claimants' continual assertion of meritless challenges could lead to sanctions.  Since the arguments asserted by the claimants in the present request pending before the Court have been the subject of previous motions and challenges by the claimants and have been consistently rejected by the Court, the United States believes that now may be time to impose sanctions against the claimants so that they will understand that there is finality to the Court's rulings and that it is improper to continue to rehash the same legal arguments on a continuous basis.

denied, 469 U.S. 1106 (1985).  The ultimate goal of the Convention was "to eliminate illicit drug trafficking."  740 F.2d at 830.  Those international agreements are part of an international framework "designed to establish suitable controls over the manufacture, distribution, transfer, and use of certain psychotropic substances."  21 U.S.C. § 801a(2).  In addition, the agreements are also "designed to establish effective control over international and domestic traffic in controlled substances."  21 U.S.C. § 801(7).  The international agreements are not self-executing.  In other words, the provisions of the international agreements only become effective to the extent that Congress enacts appropriate legislation to do so.  21 U.S.C. § 801a(2).

Article 36 of the Convention is important in two key respects: (1) parties to the agreement agree to provide for criminal penalties for any drug transactions which are contrary to the provisions of the Convention; and (2) the obligation of a party to provide for these penalties is subject to the party's constitutional limitations and the domestic law and legal system of the party.  740 F.2d at 830-31.  As a result, parties to the Convention may enact statutory provisions to provide penalties for what they deem to be illegal distribution of controlled substances and have considerable flexibility to do so.  Congress concluded that it met these obligations under the Convention by enacting various federal drug laws, including the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 801, et seq.  See 21 U.S.C. § 801a(3).  See also In re Baird, 668 F.2d 432, 433 (8th Cir. 1982), cert. denied, 102 S.Ct. 2255 (1982).

Despite claimants' arguments to the contrary, 21 U.S.C. § 801a(3)(C) does not immunize physicians improperly prescribing controlled substances nor does it even preclude the prosecution of physicians for prescribing controlled substances without a legitimate medical purpose or not in the usual course of medical practice.  Rather, the statutory provision

3

specifically states that ***nothing in the Convention on Psychotropic Substances*** is to "interfere with ethical medical practice in this country as determined by the Secretary of Health and Human Services on the basis of consensus of the views of the American medical and scientific community." Id. The statutory provision only limits the effect of the Convention on our country's laws. Neither the Convention nor Section 801a(3)(C) does anything to limit Congress' enactment of criminal laws to criminally penalize what Congress has determined to be the illegal dispensing and distribution of controlled substances by physicians. Furthermore, there is no provision in the Convention which precludes a country from criminally penalizing a physician for engaging in conduct which the country has determined to be the illegal distribution, dispensing, or trafficking in controlled substances. Quite simply, the Convention does not affect the sovereignty of a member party to prosecute a defendant for violating its laws regarding dispensing, distributing, and trafficking in controlled substances. The provisions of the Convention are designed to be consistent with "the sovereign's prerogative to institute prosecution." Richardson v. United States, 580 F.2d 946, 948 (9th Cir. 1978), cert. denied, 439 U.S. 835 (1979).

Finally, the alleged criminal conduct in this case involves alleged violations of 21 U.S.C. §§ 841, 843 and 846–all provisions which Congress enacted to comply with its obligations under the Convention to enact criminal penalties for engaging in the improper dispensing, distribution, and trafficking in controlled substances. See 21 U.S.C. §§ 201, 801a(3). The issuance of prescriptions of controlled substances to patients which are not for a legitimate medical purpose and not in the usual course of medical practice, either as individual criminal acts by a physician or in a conspiracy with others, has been found to violate those statutory provisions. Such

violations can clearly be prosecuted by the federal government under the Comprehensive Drug

Abuse Prevention And Control Act, 21 U.S.C. § 801, et seq., and can result in the criminal

penalties prescribed by federal law.  See United States v. Moore, 423 U.S. 335 (1975); United

States v. McIver, 470 F.3d 550 (4th Cir. 2006), cert. denied, 550 U.S. 936 (2007).

In summary, 21 U.S.C. § 801a(3) provides no immunity or protection for the claimants in

this civil forfeiture proceeding.  In reality, it has quite the opposite effect.  That statutory

provision makes it clear that the criminal statutes involved in this case are not impaired by the

Convention.  Congress enacted the criminal penalties in 21 U.S.C. §§ 841, 843 and 846 ***to***

***comply with the Convention***.  See 21 U.S.C. §§ 201, 801a(3). Thus, the claimants' attempts at

trying to use 21 U.S.C. § 801a(3) as a shield in this civil forfeiture action is completely without

merit and their request for relief should be rejected.[2]

### III.  BOND v. UNITED STATES, 131 S.Ct. 2355 (2011) IS NOT APPLICABLE TO THIS CASE, AND CLAIMANTS' ARGUMENTS BASED ON BOND SHOULD BE REJECTED

Claimants argues that Supreme Court's decision in Bond v. United States, 131 S.Ct. 2355

(2011) requires that this civil forfeiture action be dismissed because the United States has

"usurped" the power of the states and that the matters involved in this case "properly belongs to

the medical community."  Claimants' request at pp. 2-3.  Bond actually addressed whether a

---

[2]Claimants attach a copy of the West Virginia Board of Medicine's "Policy for the Use of Controlled Substances for the Treatment of Pain" to their request.  This policy deals with medical licensing and disciplinary issues when prescribing, ordering, and dispensing controlled substances for pain.  See Pages1-2.  The policy specifically states that physicians, for medical licensing and disciplinary purposes, must comply with applicable controlled substances laws and regulations: "Compliance with applicable state or federal law is required."  See Page 4.  The policy provides no immunity from federal criminal controlled substances laws for physicians who engage in illegal conduct.

person convicted of a crime under the Chemical Weapons Convention Implementation Act of 1998 had standing to assert a defense that the conviction violated the Tenth Amendment when the alleged criminal conduct was local in nature.  The Supreme Court held that under such circumstances that the criminal defendant had standing to assert such a defense.  131 S.Ct. 2365-66.  The Supreme Court did not invalidate the conviction or suggest that the defense would even be successful.  Rather, the Supreme Court remanded the case back to the Court of Appeals to determine whether the statute involved violated the Tenth Amendment in specific regard to the defendant's conviction.  131 S.Ct. 2366-67.

Here, Bond is not relevant because this civil forfeiture case does not involve the Chemical Weapons Convention Implementation Act of 1998.  This case involves a civil forfeiture action based on alleged violations of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 801, et seq.  The Supreme Court has held that the Comprehensive Drug Abuse Prevention and Control Act does not violate the Tenth Amendment, even if the alleged criminal conduct is purely intrastate or local in nature because the Comprehensive Drug Abuse Prevention and Control Act is a valid exercise of the Commerce Clause and encompasses purely intrastate or local conduct.  Gonzales v. Raich, 545 U.S. 1 (2005).  The Supreme Court specifically held in Gonzales that the Comprehensive Drug Abuse Prevention and Control Act is "a valid exercise of federal power" even when the facts involve a purely local event because of the expansive reach of the Commerce Clause of the Constitution.  Gonzales, 545 U.S. at 10.

Since the Supreme Court in Gonzales rejected the same Tenth Amendment challenge against the Comprehensive Drug Abuse Prevention and Control Act  being asserted in this civil forfeiture action, Bond has no relevance to this civil forfeiture proceeding.  As the Supreme

6

Court held in <u>Gonzales</u>, the prosecution of physicians and others under the Comprehensive Drug Abuse Prevention and Control Act for the type of conduct involved in this case–the issuance of prescriptions of controlled substances for illegitimate medical purposes and not in the usual course of medical practice-- is a valid exercise of federal power which is not solely an area under the exclusive control of the states.  <u>See</u>  <u>Gonzales</u>, 545 U.S. at 9-10; <u>United States v. Moore</u>, 423 U.S. 335 (1975); <u>United States v. McIver</u>, 470 F.3d 550 (4th Cir. 2006), <u>cert.</u> <u>denied</u>, 550 U.S. 936 (2007).  Thus, claimants' arguments based on <u>Bond</u> should be rejected.

## IV.  CONCLUSION

The claimants' request is more of the same repetitive arguments previously rejected by this Court in its earlier rulings.  The claimants' request for relief has no merit and should be rejected just as the Court has consistently done on previous occasions.  The United States respectfully requests that the claimants' requested relief be denied.

**Respectfully submitted,**

**R. BOOTH GOODWIN II**
**United States Attorney**

<u>**s/Fred B. Westfall, Jr.**</u>
WV State Bar No. 3992
Assistant United States Attorney
Attorney for United States
P.O. Box 1713
Charleston, WV  25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA,

               Plaintiff,

     v.                             CIVIL ACTION NO. 2:10-1087
                                        Judge John T. Copenhaver, Jr.

$88,029.08, MORE OR LESS,
IN UNITED STATES CURRENCY,

               Defendant.

(Katherine Anne Hoover, M.D. and
 John F. Tomasic, interested parties;
 no pending federal charges)

## CERTIFICATE OF SERVICE

     I electronically filed the foregoing "**RESPONSE OF THE UNITED STATES OF AMERICA TO JOHN F. TOMASIC AND KATHERINE ANNE HOOVER, M.D.'S REQUEST FOR A RULING ON 801(a)(3)(C) AND NOTIFICATION OF BOND V UNITED STATES 564 US (2011)**" with the Clerk of Court using the CM/ECF system this 19th day of September, 2011, and I hereby certify that service was made this day, by Federal Express International to the following:

                        Katherine Anne Hoover, MD and John F. Tomasic
                        c/o Dr. Norman Gay
                        N-3222
                        247 West Bay Street
                        Nassau, N.P.   Bahamas

                        **s/ Fred B. Westfall, Jr.**
                        Assistant United States Attorney