## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                              **Case No. 2:10-cv-1087 (L)**

**$88,029.08, MORE OR LESS,**
**IN UNITED STATES CURRENCY,**

      **Defendant.**

**(Katherine Anne Hoover, M.D. and**
**John F. Tomasic, interested parties,**
**no pending federal charges)**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the motion for summary judgment as to the interest of John F. Tomasic in the defendant currency, which motion was filed by the United States and served on the interested parties on October 7, 2011.  (ECF No. 121.)  This is a consolidated case of two forfeiture actions (Nos. 2:10-cv-1087 and 2:11-cv-0101) in which the United States seeks to retain a portion of money which it seized; only the currency in 2:10-cv-1087 (proceeds of WesBanco checking account ending 7905 and $2,902 in currency found in a bedroom dresser) is the subject of the instant motion.  The United States asserts that interested party John F. Tomasic (hereinafter "IP Tomasic") lacks standing to defend this forfeiture action.  ECF No. 121, at 1.

The United States served a notice of filing of motion for summary judgment and claimant's obligation to respond on both interested parties via Federal Express International.  ECF No. 123-1.  The interested parties, who are proceeding *pro se*, filed

their response (ECF No. 130), and the United States filed its reply (ECF No. 133).  The notice of filing and claimant's obligation served by the United States was not entirely consistent with the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975); accordingly, the undersigned filed a more specific *Roseboro* notice and set deadlines for the filing of an additional response.  (ECF No. 134.)  The response of the interested parties was due December 9, 2011.  *Id.*  Other than various motions attacking the competence of the presiding District Judge and alleging "patient abandonment" by the undersigned, the interested parties have not filed an additional response to the motion for summary judgment.

### Positions of the Parties

The United States asserts that IP Tomasic lacks standing to defend this forfeiture action.  (ECF No. 121, at 1.)  It contends that IP Tomasic "has neither an ownership interest nor a possessory interest in the defendant currency."  *Id.* at 2.  In support of this argument, the government has provided an affidavit of FBI Special Agent James F. Lafferty II with attached financial analysis, and a certified copy of an "Order Granting Permission and Authority to Compromise and Settle Claim" filed in an action in the United States District Court for the Northern District of West Virginia.

The interested parties' response asserts that "[t]he key issue . . . is the abrupt cessation of medical treatment for thousands of legitimate medical patients which has resulted in the deaths of thirty-two people."  (ECF No. 130, at 1.)  Without providing any affidavits, depositions, or other statements under oath, the response asserts that "Dr. Hoover prescribed medications for legitimate medical purposes."  *Id.* at 2.  It states that "John F. Tomasic has never been involved with the legitimate medical practice where his wife, Katherine A. Hoover MD, worked."  *Id.*

2

John F. Tomasic has Article III standing regarding the WesBanco account xxxx7905. At all times, he was authorized to deposit or withdraw money from that account and chose not to withdraw any of his money. The WesBanco Account xxxx7905 is a joint bank account belonging to both John F. Tomasic and Katherine A. Hoover MD. At all times, John F. Tomasic had dominion and control over the assets in xxxx7905. The agreement that John F. Tomasic and Katherine A. Hoover MD have had is that their assets were held jointly, with certain exceptions. The exceptions were with the deposit made by John F. Tomasic of the check from his mother's estate and the settlement from the lawsuit over the murder of our son, Michael Tomasic. The check from Josephine Tomasic's estate was clearly to John F. Tomasic and we agreed this money was for his use. The money from the lawsuit was divided according to the Order from Magistrate Judge Kaull. * * * Again, we agreed that money from the lawsuit settlement to John F. Tomasic belonged exclusively to John F. Tomasic. The check was made payable to John F. Tomasic for his use only. John F. Tomasic had predetermined uses for his money.

* * *

When there was an issue regarding the settlement of William B. Hoover's estate, Dr. Hoover asked to borrow the money from her husband that he received from the lawsuit and his mother. He agreed to loan it to her. The matter of the estate involved just Katherine A. Hoover MD and was completely separate from John F. Tomasic and his money. James Lafferty provided the evidence of the money deposited by Katherine A. Hoover for the ethical and legal practice of medicine, which was jointly held by the interested parties. After the loan, the deposits of her checks from Dr. Ryc[k]man for her work as an independent contractor were repayment to John F. Tomasic.

Dr. Hoover and John F. Tomasic only had access to bank accounts that belonged to them. Dr. Hoover and Mr. Tomasic had no knowledge of the money deposited into the accounts in Williamson, West Virginia belonging to Mountain Medical Care Center or Dr. Ryc[k]man. Cash is legal tender to pay bills and normally businesses deposit their money into a bank for accounting and disbursement purposes. Dr. Hoover was paid from these bank accounts for the work that she did. Dr. Hoover did deposit part of her checks and then take part out in cash for spending money.

The loan agreement between the interested parties was a verbal agreement. We are grateful to have such a happy, trusting marriage and the ability to support each other unconditionally that makes a written agreement unnecessary. Verbal agreements are legal and binding in any court of law. The loan to Dr. Hoover was made with the express intent of repayment by Dr. Hoover. Mr. Tomasic had projects planned that

3

required funding that he had from his part of the lawsuit settlement. The United States Attorney improperly seized that money and is continuing to hold the money without legal justification. The current forfeiture system should certainly be ruled unconstitutional by the Courts. It will take a courageous judge to do this. The justification to seize and hold money when no crime has been charged or committed is unconstitutional. The Court needs to uphold the interests and rights of the citizens of the United States.

*Id.* at 2-3.

None of the factual statements in the response will be considered with respect to the motion for summary judgment because the interested parties ignored the court's specific notice that factual statements must be sworn. The undersigned will rely on the facts set forth in Agent Lafferty's affidavit and attached exhibit.

### Applicable Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable factfinder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing—"that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); *id.* at 322–23. A party is entitled

4

to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. *Anderson,* 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.,* 950 F.2d 931, 937 (4th Cir.1991).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1239 (4th Cir.1995), nor make determinations of credibility. *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir.1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). Inferences that are "drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

## Facts

During the period August 2008 through February 2010, interested party Hoover was paid money in checks for her medical services to "the clinic" (which operated under the name "Mountain Medical Care Center, LLC" and various names during that period). Sums from "the clinic" and other sources were deposited into WesBanco account xxxx7905. (Affidavit of Special Agent Lafferty, ECF No. 122, ¶¶ 5(A)-(G), at 4-9.) WesBanco account xxxx7905 is a joint account in the names of Katherine Anne Hoover, M.D., or John Tomasic. *Id.,* ¶ 5(G), at 9. From July 31, 2008 through February 28, 2010, all deposits (excluding interest payments and six specific checks totalling

$224,590.58) were from IP Hoover's payments from "the clinic."  *Id.*, ¶¶ 5(F) and (G), at 7-8.  During that same period, all checks written on WesBanco account xxxx7905 and representing withdrawals were written by IP Hoover.   *Id.*, ¶ 5(G).   IP Tomasic's signature appears on only two documents: he endorsed a check for $2,876 from the U.S. Department of the Treasury payable to IP Hoover and Tomasic; he endorsed a check payable to himself in the amount of $21,902.83 from a life insurance company.  *Id.*

Due to the commingling of funds from "the clinic" and other sources by IP Hoover, Agent Lafferty used the Lowest Intermediate Balance Rule ("LIBR") to determine the amount of funds remaining in the account that were traceable to IP Hoover's association with "the clinic."  *Id.*, ¶¶ 5(H) and (I).  The LIBR method assumes that deposits from "the clinic" remain in the account as long as the account balance is equal to or greater than the amount of the deposits from "the clinic."  *Id.* ¶ 5(I). All disbursements are deducted from deposits not related to "the clinic" before deductions are made from clinic deposits.  *Id.* ¶ 5(J).   The Second Circuit referred to this as a "drugs-in, last-out" rule."  *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1159 (2d Cir. 1986).

As set forth in Agent Lafferty's Affidavit Exhibit B (ECF No. 122, at 111-12), he used the starting balance of $13,431.68 on July 31, 2008, and assumed that those funds were not clinic-related.  Those funds were exhausted after disbursements of $2,093.15 (August, 2008), $10,327.22 (September, 2008), and $5,165.00 (October, 2008).  During those three months, deposits of $5,500, $4,000, and $2,500, were made with checks from "the clinic." Until July 31, 2009, the balance of non-clinic funds remained at zero, although deposits were made from non-clinic sources.  This is because disbursements were deducted first from non-clinic sources and then from clinic deposits.  As of July 31,

2009, the balance was $11,231.66.  In August, 2009, deposits from non-clinic sources (including the settlement check of $191,775.75) totalled $192,486.17; deposits from "the clinic" were $10,000.  Disbursements of $11,360.98 were deducted from non-clinic sources, leaving a balance of $202,356.85.  The last non-clinic deposit (other than interest) shown on Exhibit B was $20,902.83 [sic: $21,902.83] from a life insurance company, deposited on October 2, 2009.  Again, disbursements continued to be deducted from non-clinic funds first, and then from clinic proceeds.  By the time the seizure warrant was executed in early March, 2010, non-clinic funds were exhausted and $85,127.08 remained as the balance.  According to Agent Lafferty's Affidavit, the total amount paid to IP Hoover in checks by "the clinic" from August 6, 2008 to January 27, 2010 was $137,000.  (ECF No. 122, at 6-7.)

The sum of $2,902 in United States currency was seized from the bedroom used by IP Hoover in a house primarily occupied by Dr. Diane Shafer in Williamson, West Virginia.  Agent Lafferty's Affidavit states that the person who deposited checks from "the clinic" requested and received some of the money in cash.  *Id.* at 7.  For example, checks dated November 24, 2009 through January 27, 2010 totalled $28,500, of which $25,500 was deposited in WesBanco xxxx7905, suggesting that $3,000 was returned to the depositor in cash.  *Id.* at 112.

## Analysis

### $2,902 in United States currency

IP Tomasic filed a Verified Response in this action in which he stated that he was with his wife, IP Hoover, when she cashed a check from her uncle's estate and received $3,000 in cash and a certified check, at the First United Bank in Fort Lauderdale,

Florida.  (ECF No. 15, at 2.)  IP Hoover filed a Verified Response in which she stated as follows:

> The money seized from Dr. Hoover's bedroom at Dr. Shafer's house was in two bank envelopes.  One envelope was from First United Bank of Fort Lauderdale, FL with somewhat less than $3,000.00.  The other bank envelope was from WesBanco with somewhat less than $500.00.  Dr. Hoover had deposited part of her paycheck in the joint account ending in 7905 and taken $500.00 in cash.

(ECF No. 20, at 2.)  By Memorandum Opinion and Order filed April 12, 2011, Judge Copenhaver deemed the verified responses to satisfy the requirements for both a claim and a responsive pleading under Rule G(5) of the Supplemental Rules.  (ECF No. 53, at 5.)  The assertions in the Verified Responses were repeated in documents filed at ECF Nos. 29 and 32.  Thus IP Tomasic did not assert that he had any ownership claim to the $2905.  However, in a subsequent filing, IPs Hoover and Tomasic contended that "[t]he remaining cash of $2905.00, taken from Dr. Hoover's bedroom in Williamson, West Virginia, belonged to Mr. Tomasic as repayment on his loan [to IP Hoover to settle her uncle's estate]."  (ECF No. 94, at 1.)

IP Tomasic has disavowed any knowledge of the operation of "the clinic."  (ECF No. 15, at 2.)  He has admitted that his wife was paid by checks for her work at "the clinic" and that she deposited the payments into WesBanco account xxxx7905, their joint account.  *Id.*, at 3.

If one takes IP Hoover's Verified Response as true, that part of the cash was from her paycheck, then IP Tomasic had no ownership interest in that portion of the currency.  If one takes as true the interested parties' assertion that part of the cash was supposed to be repayment of IP Tomasic's loan to IP Hoover to settle her uncle's estate, then IP Tomasic is simply an unsecured creditor.  Title 18, United States Code, Section

983(d)(6)(B)(i) states that "a person with only a general unsecured interest in, or claim against, the property or estate of another" is not an "owner." The money which IP Hoover received from her uncle's estate was her property, as to which IP Tomasic was not an "owner."

The undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact as to IP Tomasic's lack of an ownership interest in the $2,905 seized from IP Hoover's bedroom and that the United States is entitled to judgment as a matter of law.

<u>$85,127.08 Seized from WesBanco Account xxxx7905</u>

There is no dispute that checks from "the clinic" and payable to IP Hoover were deposited in the WesBanco account. In numerous documents filed by the interested parties, they insist that the money seized from that account was the proceeds of a settlement payment on account of the death of their son while in custody at the Northern Regional Jail. The United States agrees that a check payable to IP Tomasic in the amount of $191,775.75 was deposited into the account. (ECF No. 122, at 8.)

The United States contends that IP Tomasic has no ownership or possessory interest in the money seized from the WesBanco account because the funds from the settlement payment were no longer in the account at the time of the seizure. (ECF No. 123, at 14.) As set forth above, at pages 6-7, and based on Agent Lafferty's Affidavit and LIBR analysis, the entire sum of $85,127.08 seized from the account is traceable to IP Hoover's payments from "the clinic," the non-clinic funds having been exhausted. The United States asserts that, pursuant to 21 U.S.C. § 881(h), "[a]ll right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." (ECF No. 123,

at 18-19.)  The acts which led to the forfeiture were the controlled substance violations allegedly committed at "the clinic" by IP Hoover, as to which IP Tomasic had no participation.

The undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact, that the entire sum of $85,127.08 seized from the WesBanco account ending in 7905 is traceable to payments made by "the clinic" to IP Hoover, that IP Tomasic has no ownership or possessory interest in that sum, and that the United States is entitled to judgment as a matter of law.

## Recommendation

It is respectfully **RECOMMENDED** that the Motion for Summary Judgment as to the Interest of John F. Tomasic (ECF No. 121) be granted.

## Notice

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).   Copies of such objections shall be provided to Judge Copenhaver and the United States Attorney.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit it electronically to the interested parties and counsel of record.


<u>December 30, 2011</u>

Mary E. Stanley
United States Magistrate Judge

11